I need to just give one little procedural aspect to this appeal. Mr. Teeter was the lead counsel on this appeal. He passed away in July, so I've taken over the appeal. I was co-counsel, but quite frankly, I'd expected him. He was quite more familiar with the underlying record. When I looked at the telegraph and the excerpts of record, one thing that was not brought up in the opening brief, and I believe because of Mr. Teeter's illness, intervening illness, that's why I didn't file a reply brief. But one thing that was not brought up is I have some qualms with the record in the sense that the district court's order denying leave to intervene is absolutely silent as to the reasons, whether it's permissive intervention that was being denied. Well, intervention as a whole was being denied, but under what standard, why permissive intervention wouldn't apply, why mandatory intervention wouldn't apply. So I can't make heads or tails of the district court order. Even the summary judgment order of the underlying appeal appears to me to be just a rubber stamp of the findings of fact and conclusions of law. I didn't see any order in the record by which the district court reasoned to those facts or to those conclusions. Now, so that's not what's standing. How do you have standing on appeal? Well, number one, these are parties who appealed at the planning commission level. And these were parties who won at the planning commission level and had a protectable interest under the municipal code as a result of that and would have had then a cause of action under the Logan case that we cited. And under the Logan versus Simmon & Brush, a cause of action is a protectable property interest for purposes of being considered property as a species of property under the 14th Amendment. So for both due process reasons and under State law, they had a direct interest. And they have a direct interest. But who are the appellants? Who are the appellants? The appellants are residents. That I can answer. I was there when the appellants hired Mr. Teeter and myself. Those are local residents who own properties or reside near the site, near the cellular site. These are residents in the Silver Lake area. Many of them are elderly people who are very, very opposed to this site coming in. And we're at the planning commission and joined with Ms. Zahigian in the appeal of the zoning administrator's decision to grant the CUP to AB Cellular, which was then, of course, reversed. So I think there's clearly a case of controversy here. And if the court were — if the district court had given permission for Lee to intervene, could have addressed the merits in some manner that could have redressed the injuries that they're claiming. What is the injury? Well, number one, they're claiming that their value to their property values are diminished. Number two, that there were visual aesthetic effects to placing this cellular site on, the particular location that it was. As I said, there is also a protectable interest in the sense that the cause of action has been taken from them. And that in itself can be considered an injury in species and property under the 14th Amendment. The other point is, is that there was an issue here of timeliness. And I need to point out that Ms. Zahigian's declaration to the district court clearly stated that the councilperson or a member of the councilperson's staff, after judgment had been entered, called her and told her that the city was not going to appeal. Immediately after the learning of that, this motion for intervention was filed with the district court. And that distinguishes it from the NAACP case, where the appellants there simply sat on their rights, even after the Justice Department had notified them that they were not going to oppose a motion for summary judgment. And I think there are two aspects to timeliness here. One aspect to timeliness is an issue of timeliness in the district court itself during the course of the proceedings. But that was already being defended by the city of L.A. Well, counsel, here's my difficulty. In terms of the underlying judgment, the appeal period is jurisdictional. And if a notice of appeal is not filed within the 30-day period, we have no jurisdiction to hear an appeal of the underlying judgment. I have thought about that, obviously. And there are two aspects I would urge the Court to consider. Number one, Federal rules of appellate procedure don't directly address a unique procedural situation like this, where you have a direct motion to intervene. FRAP Rule 4, I don't have the subsection size, but FRAP Rule 4, of course, gives certain exceptions that were told the period for filing a notice of appeal. One of those is when a motion is made to alter or amend a judgment under Rule 59. It didn't happen. Well, but this circuit has said, and I found a case that I would cite to the Court, a case called Andrade v. the Attorney General at 270 F. 3rd, 743, that a timely motion under FRAP Rule 4 for extension of time to file a notice of appeal may be considered a functional equivalent of a notice of appeal, provided it gives notice of those elements required by FRAP Rule 3A1. Okay. Was a motion to extend the time for filing an appeal filed in this case? But the motion to intervene is the first step for it to be able to ask for a motion to extend the time to file an appeal. So my argument would be, number one, that all the elements of FRAP Rule 3A1 constituted a functional equivalent of a notice of appeal. It put on notice both the district court and A.B. Cellular that these were parties who were going to challenge the judgment and wanted to challenge the judgment either by altering it in the district court or appealing it. The second point is, assuming, in fact, that the notice of appeal aspect of the underlying judgment is jurisdictional, it's certainly not jurisdictional as far as the motion to intervene. Clearly, a motion to intervene, timely appeal, this Court has jurisdiction. Now, the question would be, well, what's the practical effect if, in fact, the underlying judgment supposedly is final? But there are exceptions under FRAP Rule 4A, once again, that would allow, once again, going back to the district court to file a motion regardless of the time element to allow a notice of appeal of the underlying judgment to be filed for either excusable neglect or good cause. And I believe A.B. Cellular's position is that you can't even file a notice of appeal until the motion to intervene is granted. So if the motion to intervene were granted and the Court were to determine that, in fact, there was no jurisdiction to determine the underlying judgment at this point, then the next step would be to go forward and ask the district court for a leave to file a motion, a notice of appeal on the underlying judgment. If the Court has any further questions, I would reserve my time for that. All right. Thank you, Counsel. Good morning. Adam Caldwell for A.B. Cellular. This wasn't a close case below. The city zoning administrator called A.B. Cellular's proposal the most benign wireless facility he had ever seen in the 1,500 applications he had reviewed for wireless facilities. Let's be clear about what this application was for because the residents who were opposed weren't clear. They continuously called it a tower. This was not a tower. This was an application for four four-foot-high panel antennas, about as high as this podium, eight inches wide by an inch and a half deep on the top of a commercial building located next to a 7-Eleven parking lot and screened from view from anybody by the extension of an existing parapet wall that came up above the roofline of that building. There was absolutely no traditional local zoning basis to deny that facility. It produced no noise. It produced no visual impacts. It produced no pollution, no congestion, no increased density. It didn't change the nature of the use of the building it went on, which was a commercial property that housed a dry cleaner and other businesses. It was a simple case. It was undisputed that the facility would comply with the FCC regulations on RF emissions, but nevertheless, residents objected, calling this a tower and saying they didn't want to live in the path of what they believed to be harmful radio frequency emissions. Of course, it's presumed under the federal statute we sued under, Section 332 of the Telecommunications Act, that as long as you comply with the FCC's regulations, a locality cannot deny a site on the basis of radio frequency emissions. That's all that was in the record, and so we won on summary judgment. We won on both our claim that the denial was not based on substantial evidence and the denial was impermissibly based on radio frequency emissions. Now, it's very important what happened since then, because after we won summary judgment, although there wasn't a formal settlement agreement in the case, we cooperated with the city to resolve the case. We stipulated with the city to dismiss our last remaining count, the unreasonable discrimination claim, in Section 332, which was count three of our complaint. We submitted proposed findings of fact and conclusions of law that the city didn't object to, and the city decided not to appeal. The city, immediately after final judgment was entered, issued the conditional use permit that we sought, and we agreed that we would not pursue our notice of appeal of the earlier dismissal of the Section 1983 claim, which was then a live claim because this court's ruling in Abrams was still good law. It's not now after the Supreme Court's decision. I have some personal experience with that one. I was lucky enough to be in a case in the district court in the Southern District when Abrams was good law and got out with my attorney's fees before it became bad law. Lucky you. Very lucky. Lucky client. But in any event, we said we'll dismiss that appeal as soon as you issue all the remaining permits so that we can construct this facility. They did issue the building permit on June 22nd, 2004, and we, on June 25th, stipulated to the dismissal of the Section 1983 appeal. And so all this time, we then, by the way, installed the facility, and this is all in the record. We installed the facility on November 16th, 2004, and the facility is now in operation and part of the network and being used by callers for important communications, including, of course, 911 calls. So that's what happened since the judgment, and then we have a sideline appeal from interveners who were involved below at the Area Planning Commission but then sat on the sidelines while we litigated for a year and then tried to get back into the case. Now, we did raise four jurisdictional defects in this claim, and you've touched on a couple of them. One is the issue of standing, and I want to correct something that was said. The allegation that they have standing is based on the claim that these appellants won at the Area Planning Commission. These appellants did not win at the Area Planning Commission. Ann Sahagian won at the Area Planning Commission. Check her appeal. She says it's just her name, and then she says she's representing some other neighbors. It doesn't say anything about an unincorporated group of concerned citizens. Nothing at all about that. Ann Sahagian was on the motion to intervene papers, but she's not in this appeal. Only the concerned citizens are. So even if you went with a proposition that they have some property interest in a claim to defend their victory, which I don't think is the issue. I think the issue is the city's need to defend its compliance with federal law, but even if you went with that proposition, that appellant, Ann Sahagian, is not before you, and of course neither is the city. So I don't believe they have standing. Let me ask you if under California law, a private citizen can enforce its zoning laws by actions that a government might not take to enforce its environmental laws or its zoning laws more specifically. Is not that the case, that an individual citizen can? I think the way to look at it is if the Area Planning Commission had granted us the CUP in the first place, could the citizens have filed an action for mandamus in state court? I think that's probably true. Well, could they file a direct action against your client? I don't know. In a case in which they allege a violation of the zoning ordinance. They can't, can they not? They have standing to enforce the zoning ordinance. Interestingly, I don't know that they could do that. If we, for instance, install the facility, which we have, and didn't comply with the terms of the conditional use permit and violated them, the city could revoke that permit. But can't an individual citizen under California law bring an action to enforce compliance with the zoning law? They might. They might bring a nuisance action, I suppose. Well, can they? Do you happen to know? I don't know. I know in some states there is an action that a citizen can bring. I don't know. I would assume that if they were really suffering harms right now from our facility, which is there, that they might be able to bring some sort of property claim. Let's assume that they do have standing to enforce, an individual citizen has standing to enforce a zoning rule.  Wouldn't that give them standing? No. I don't believe so. Because I believe the issue in this case is whether or not the city complied with the federal law. All right. Well, that goes to the merits. And you've argued the merits here of the decision that you should have been granted the permit. But I'm talking about pure standing. If we're to say that these parties have no standing, can we imagine anybody who would, other than the parties to this litigation in the district court from the beginning? No intervener. Don't they have some standing here because they're neighbors and because they have standing to enforce the local zoning ordinances? Well, let's talk, first of all, about practicalities. We actually don't know. No, no. I know the practicalities. We don't know who they are. Okay. So we don't have any ground for standing. In fact, we raised standing and the appellants didn't address it because they said standing is not relevant. They only have to meet the grounds for intervention. You might concede that a named party, such as the one you mentioned, the one who appeared before the commission, might have some standing. It might be a different case if she were here. But I don't think the issue in this case is preserving their victory on appeal. The claim and interest in this case is whether or not the city met its duty to comply with the procedural and substantive requirements of Section 332. And I draw the court's attention to the court's decision in the Portland Audubon case. I just want to read briefly from that case. That was where Portland Audubon claimed that the Interior Department proposed timber sales that violated NEPA and some logging interests wanted to intervene as defendants to, I suppose, help the Interior Department defend their decision. And this court said as follows, the only focus that the ongoing litigation can have is whether the government bodies charged with compliance have satisfied the federal statutory procedural requirements in making the administrative decision regarding the construction which would directly impact plaintiff's property. In a suit such as this, brought to require compliance with federal statutes regulating government projects, the governmental bodies charged with compliance can be the only defendants. It would be odd, I think, if a couple of residents could intervene and overrule the city on the city's decision. They don't win. The issue is one of standing. Now, totally aside from who gets to win, you think we should say they have no standing. That's it. We don't care about the merits. That's true. And it's your position that this ill-defined group with no name other than one that is to their liking, otherwise unidentified, not incorporated, has no standing. Correct. And that's the end of the case. Correct. Okay. Now, the other issue, I take it that you concede that this notice of appeal is done. As to the denial of the motion to intervene, yes. And that would be the only issue that we could decide. And if we decide they can intervene, then what? I mean, if we decide that they have standing, and if we decide that anything is timely, it's only the timely appeal from the denial of the motion to intervene. Correct. And then we should say they get to, if they win, if they win, the most that we could say on their behalf is that they get to then litigate the merits in some future proceeding or this one. I don't even think you could do that. They did not file a notice of appeal within 30 days of the judgment. I submit that they didn't do that by events of their own making. They didn't protect their rights. So they didn't do that within 30 days. Now, they then, after the denial of their intervention, did note an appeal of that within 30 days. And what counsel said earlier was that the motion to intervene for purposes of leave to pursue the appeal should be considered a timely notice of appeal. Maybe. And the court has discretion to consider an imperfect notice of appeal as a notice of appeal. But two very big problems with that. Number one, they did not make in their motion to intervene their intention simply to appeal clear. Instead, they also moved under Rule 60B at the end of their motion for intervene for further relief from the district court. They wanted the district court to declare the judgment void because they weren't notified by the city that the case was going on. They also set up a due process claim against the city in their motion to intervene and their complaint and intervention. So I submit they were trying to have it both ways. They didn't really want the district court litigation to be over. But they didn't file a notice of appeal of what's indisputably a final judgment. So we're kind of, in talking about their intervention, in my view, talking about nothing. Because if you said you were wrong, you should have been able to intervene. They already lost the right to note an appeal from the judgment. And the case is moot because the city took all the action we requested, granted the cup, granted the building permit. The interveners did nothing, absolutely nothing, to get a stay of the injunction pending appeal and perfect their appeal. So I think it's a nullity if you would say, well, the district court was wrong and they should have been allowed to intervene under the facts of this case, which are distinguishable from the facts of the Enriquez case that bounced around and up to the Supreme Court and back and forth. There, Arizonans for Official English took some steps before the time for appealing the judgment had run to preserve their rights. They moved to extend the time to appeal the judgment out beyond the time that their intervention motion was ruled upon. So that when they appealed from the intervention denial, the time for noting an appeal was still outstanding. And they just noted an appeal on the intervention. In that case, the court said, well, now that we say that you intervened, you should have been allowed to intervene, we will send you back and give you leave to file permission to file a notice of appeal in the district court. But these interveners didn't take those procedural steps to defend their rights. Now, the appellants cited a couple of cases in support of their claim that this is a timely appeal and a timely motion. And they referred to the United States against Covington Technologies. Now, as near as I can tell from those cases, if you file a motion to intervene within the time allowed by the time for appeal, after the court denies it, you have a right to appeal. And in those cases, this court went to the merits. Well, two things about those cases. The first thing is that there was a timely motion for leave to intervene solely for purposes of appeal, without the complication of the 60B request. Okay, there were pure motions to intervene for the purpose of appeal. Yes. The other thing I'd note about that McCall, U.S. ex-rel McCall versus Covington, it was a Keith Hamm case. Right. And so it was brought in the first place, of course, in the name of the government, but by plaintiffs. It was reasonable to expect. The government could intervene any time in that case. It was always in the government's interest that the case was brought. And so when the government sought to intervene later, there was no issue of prejudice, because when you look at timeliness, of course, you've got to look at prejudice to the parties and the reasons for delay and so forth. And there was also a clear violation of the AG's right to sign off on the dismissal of a defendant there. All I'm concerned with is that that case tells us that the notice of appeal is timely. It doesn't matter about the merits. It says the notice of appeal is timely. Which notice of appeal? Of the intervention or of the intervention? The intervener's notice of appeal was timely in both of those cases. In those cases, they were, and again. So they weren't within the 30 days of the judgment, because they were within 30 days of the ruling on the intervention. I can't say for sure that those cases. In fact, I know. Actually, I can say for sure. One of the cases they cited, I believe, was the United Airlines case. And in fact, there, the judgment was entered. They moved to intervene right afterwards. They must have done something to get the Court to act very quickly on the motioned intervention. Okay. Denied within two days. And then they noted an appeal of everything, and it was all within 30 days. I don't want to take any more of your time. Go ahead and finish. Okay. Well, we also submit that since they were in a party, they couldn't appeal the merits of this case. As I said, I think the case on the, if you ever got there, and I don't think there is a reason to get there, it's very, very clear from the record that the opposition to this site was based only on radio frequency emissions. It is, some people said, well, the emissions will, or the fear of emissions will impact my property values. Okay. Well, it's been held by other courts, cited in our brief, that that's just another way of saying our radio frequency emissions, and that's just as prohibited by Section 332 as anything else. There were also a couple of passing references to aesthetic impacts, but again, they called it a tower. And in the Second Circuit, in the Oyster Bay case, said when you're wrong about the, when residents are wrong about the nature of the installation, we don't have to give their testimony any weight. Okay. In Oyster Bay, they said that the site would be a mass of spaghetti wires, and of course it wasn't. And so when they talk about a tower, as I pointed out, we're talking about something no bigger than this podium right here. So, and lastly, even if you found some evidence in the record of something other than RF concerns, that's not substantial evidence. It's got to be more than a scintilla, but less than a preponderance. And again, in the Oyster Bay case, the court said, yes, some residents talked about a couple other things, but the evidence was so overwhelming that it was all about radio frequency emissions, that we simply can't say that the denial was based on substantial evidence of any allowable traditional local zoning concern, as opposed to a non-allowable concern over the health effects of RF emissions. Thank you. Thank you, Counsel Rebuttal. Thank you, Your Honor. As far as the Portland Audubon case that counsel cites, that has been distinguished in two cases by this circuit. One case is a, and that case cites the underlying case, Forest Conservation Council versus U.S. Forest Service at 66 F 3rd, 1489. And then at 1494, it cites the Sierra Club Conservation Council versus U.S. Environmental Protective Agency case, in which the distinguishing factors between Portland Audubon, Sierra Club, and this case that I just cited, was that Sierra Club reaffirmed that in order to establish a protectable interest sufficient to intervene as of right, an applicant intervener must establish that the interest asserted is protectable under some law and two, that there is a relationship between the legally protected interest and the claims at issue. So getting back to my original argument, I believe they have met the requirement under the municipal code and under their personal property interest that they have in the area for purposes of having a legally protectable interest. And it doesn't have to be a legally protectable interest directly under the Federal Telecommunications Act. As they said, under some law, and that some law can be the L.A. Municipal Code. With respect to Judge Levy's question as far as whether the participants could have brought some action, assuming that they had lost against the city to enforce the zoning laws or even against A.B. Cellular, certainly they could. Directly under state law, California Code of Civil Procedure 1094.5 directly allows where an administrative hearing is heard and the administrative body does not follow or abuses its discretion, either there is not substantial evidence to support the decision by the administrative body or do not follow some law required under either state or local or Federal law, that they can in fact bring an appeal directly under that code section. Under California Code of Civil Procedure 1085, they could bring a writ of mandate in general against a local agency for not following some directory requirement. Why didn't they do that here? Well, they had no reason to because the City of Los Angeles, the Planning Commission, affirmed, reversed the zoning administrators. So there was nothing for them to do. They assumed that if in fact A.B. Cellular is going to be, is A.B. Cellular that's going to challenge this decision, not them. And it's the City of Los Angeles, the primary duty originally lies with the City of Los Angeles, not with the participants. But, I mean, when the City of Los Angeles, under your theory, didn't do what it was supposed to do, then that gives your clients the right to seek relief against them. Well. Against the city. Well, that is whether in fact at the point that the city decided that they're not going to defend, that's the point of the appeal. That's already when a judgment has been entered. And to now come and file a notice of appeal directly to a superior court, let's say, after a judgment has been entered in a federal court, you've got preclusive effect of that federal judgment. The state court is not going to be able to overturn that. So the unique procedural posture here is we're not talking about in the initial litigation, because the initial litigation, the City of Los Angeles did defend it. It's at the end of the litigation, after a judgment is entered, the City of L.A. says we're abandoning the appeal. At that point, their only recourse is to make the motion to intervene. Now. I would. Oh, I'm sorry. No, go ahead. I don't. I would submit the city's reasons for abandoning the appeal baffle me. Council did raise the Abrams versus Rancho Palos Verdes case, which this circuit originally said there was an action, cause of action independently under 1983. And, of course, the U.S. Supreme Court reversed, saying that the limited remedies under the Telecommunications Act cannot allow a 1983 action. So the city was wrong on that, even though I'm not saying that they can be prescient about what the Supreme Court is going to be doing. But they certainly were wrong on that. And number two, and I think more importantly, where the city dropped the ball here is, council makes a big issue that there is substantial evidence in the underlying record. And the Planning Commission did not base it on health effects. The Planning Commission clearly stated that it was because under the municipal code they had to find co-location sites. They first had to show that they made the effort to find co-location sites, and that if they couldn't find co-location sites, then, in fact, they would come forward saying that this is the property we're going to lease and put our cellular site on. And the Planning Commission found there was substantial evidence that they had not complied with the municipal code in that respect. If we say that you do have standing, so we're going to let you, you do have standing to pursue this, what relief are you seeking against AB Cellular? We would ask for revocation of the CUP. We would ask for the CUP to be revoked and, in fact, to uphold the Planning Commission's decision. I would say, and this was my point where I think the city dropped the ball, the co-location sites are unique. There's a case that I found, unfortunately, it was not in the brief, and I apologize once again because of the procedural posture of this case, but it's a case that came out of Massachusetts. It's a federal district court case. It's Sprint Spectrum versus City of Warham at 8F2nd 118. And in that case, it was under the Telecommunications Act. Sprint had asked for a permit. They'd been denied. They sued. And the district court threw it out saying they didn't have standing under the Telecommunications Act because it's not, first of all, they don't have necessarily a legal protectable interest to the permit, but number two, they have to show they have a legally protectable interest to the underlying property where the site is going to go. Now, if I understand the record correctly, and counsel can correct me on this, it's my understanding that the co-location sites would have been the sites that ABCellular already had a property interest in, either by way of lease or owning those sites. And what they were proposing was to put this new site at a place that they were going to lease rather than a site which they already had. And that would dovetail, make a lot of sense with the municipal code requirements about co-location. And so my submission would be that the city really dropped the ball here. They should have raised or could have possibly could have raised a standing argument, a jurisdictional argument against the city, against ABCellular even breaking the action in the district court. If there's any other questions, I... Well, now, on this record, we have no idea who makes up this group that identifies itself as appellant. We have no idea who they are, how many there are, where they live, or what other interests they might have other than the one that asserts they are concerned citizens in the neighborhood. Right? Well, I would distinguish that only one way, Judge Lee. When you have a motion to intervene, it's a little different. It's not like when you're filing a lawsuit directly and you have your allegations in the complaint. But assuming, I understand for standing purposes, assuming there had been a lawsuit filed, an association, of course, can represent, an unincorporated association can represent the underlying, the member's interests, as long as the members have standing, as long as it's not asking for damages, as long as it's only asking for injunctive or declaratory relief. And it is assumed for standing, at least at the initial stages, that the pleadings are correct. So it would be my argument that they filed a motion to intervene. They indicated this was an incorporated association of residents who were in the area. And, in fact, the record shows, and I think the underlying record in the planning commission shows, that these were residents who had come to the planning commission. Well, you say these were. How do we know these were? How do we know they're not a couple that lives 15 miles away? They are the association. Or they are shareholders in some competing organization and they live 50 miles away. How do we know? But for allegations of the pleadings, the pleadings itself, it would be taken as true. If there is an evidentiary hearing on standing. What do you say about them? What do you say about them in this record? Anything more than is in there? I believe in the motion to intervene. It was directly in the notice of motion, and that was at page 309 through 324, and then in the reply memorandum at 337 to 346. That's where we'll find it. Yes, and they're also in page 311 at lines 19, 17 to 22, there's reference to residents opposed to neighborhood cell sites appearing orally and writing at the hearing to join in support of the appeal, oppose the project, and then there's a reference to the administrative record. And we know that these plaintiffs, whoever they are, are the same group. We know that from this record. That's what the motion indicates, and it's in the administrative record itself. It's in the motion and in the administrative record itself. All right. If there's anything further. No, thank you, counsel. Thank you to both counsel. The case just argued is submitted for decision by the court.
judges: Leavy, Rawlinson, Mahan